**Sanford J. BERGER, Plaintiff–Appellant,**

v.

**CITY OF MAYFIELD HEIGHTS, et al., Defendants–Appellees.**

No. 97–3525.

United States Court of Appeals, Sixth Circuit.

Argued by Appellee June 10, 1998.

Submitted by Appellant June 10, 1998.

Decided Sept. 8, 1998.

Sanford J. Berger (briefed), Berger & Fertel, Cleveland, OH, for Plaintiff–Appellant.

Leonard F. Carr (briefed), Leslie Spencer (briefed), L. Bryan Carr (argued), Carr, Feneli & Carbone, Mayfield Heights, OH, for Defendants–Appellees.

Before: BATCHELDER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

This case stems from an argument between Sanford J. Berger and one of his neighbors concerning the maintenance of an intervening vacant lot owned by Berger. Berger has kept the lot in its "natural" state, apparently to the irritation of his neighbor. As a consequence, the neighbor solicited a member of the Mayfield Heights City Council to propose an ordinance requiring owners of smaller-sized vacant lots with one hundred feet or less of street frontage to "totally cut" their lots to a height of no more than eight inches. The City of Mayfield Heights ("the City") enacted the ordinance.

Not coincidentally, Berger's vacant lot fits within the criteria of the ordinance. When he refused to comply with the City's demand to clear-cut his lot, Berger was cited for a criminal violation that is currently pending in the City's municipal court. In response, Berger sued the City and certain other defendants for various constitutional violations. After the other defendants were either dismissed by Berger or found immune from liability, the district court granted summary judgment in favor of the City on all counts of Berger's complaint.

For the reasons set forth below, we find that the ordinance in question is arbitrary and capricious on its face, and therefore unconstitutional. On the other hand, we find that all of Berger's remaining claims are without merit for the reasons set forth in the district court's opinion. We therefore AFFIRM in part and REVERSE in part the decision below.

## I. BACKGROUND

Berger and Lendell Riddle have been neighbors since 1991. On April 27, 1992, the Mayfield Heights City Council responded to Riddle's persistent complaints about Berger's unkept lot by amending Codified Ordinance ("C.O.") 917.14. The original ordinance, which was in place for 35 years, provided as follows:

### 917.14 REMOVAL OF WEEDS BY OWNERS, OCCUPANTS, ETC.

The owner, occupant or person having the charge or management of any lot or parcel of land situated within the City, whether the same is improved or unimproved, vacant or occupied, within five days after written notice to do so, served upon him or her in conformity with Ohio R.C. 731.151, shall cut or destroy or cause to be cut or destroyed any noxious or poisonous weeds or vines growing upon the lot or parcel of land, and prevent the same from blooming, going to seed, exceeding a height of eight inches or spreading pollen which may be harmful to human health.

Mayfield Heights C.O. 917.14, later changed to C.O. 917.14(a).

This ordinance was amended to include the following additional provisions:

(b) Existing lots fronting on a right-of-way and having a width of not more than 100 feet and a total area of less than one acre shall be totally cut and maintained to a height of not more than eight inches.

(c) All other unimproved or vacant lots shall be cut and maintained free of any growth, exclusive of trees or landscaping, to a height of not more than eight inches for a distance of not less than twenty feet from any right-of-way.

Mayfield Heights C.O. 917.14(b) and (c).

Under this amended ordinance, vacant lots with a width of one hundred feet or less and a total area of less than one acre (43,560 square feet) must be "totally cut and maintained to a height of not more than eight inches." All other vacant lots are only required to have their grass cut back twenty feet from the street. Given that Berger's lot has a width of 100 feet and is 42,062 square feet in size, it is subject to subsection (b) of the amended ordinance.

The City issued Berger a Warning Notice on July 8, 1993, requiring him to "cut and maintain [his] vacant lot" within five days. In response, Berger cut his grass back somewhat more than twenty feet from the sidewalk. On July 26, 1993, he was criminally charged in the City's municipal court with failing to fully comply with the new ordinance.

Berger filed a motion to dismiss the criminal charge, challenging the constitutionality of the ordinance. On September 3, 1994, he filed this suit in the federal district court. He named as defendants the City, his neighbor, the president of the City Council, the Director of the City's Building Department, the Director of the City's Service Department, and the judge in the municipal court.

Berger brings the following claims in his complaint:

Count I: That the amended ordinance is not substantially related to the public health, safety, and welfare of the City, violates Ohio Rev.Code § 731.30, and is unreasonable and arbitrary, constituting a substantive due process violation under the Fourteenth Amendment.

Count II: That the amended ordinance is unconstitutional on equal protection grounds, because it treats similarly situated landowners differently, based solely on the square footage of their properties.

Count III: That the ordinance was enforced against him only, and therefore, in a discriminatory manner.

Count IV: That the ordinance is void for vagueness.

Count V: That the ordinance is unenforceable because it was passed at the sole behest of a private citizen.

Count VI: That the ordinance denies him a property interest by requiring his compliance without a legislative finding of a "nuisance."

Count VII: That the ordinance constitutes a taking under the Fifth Amendment.

Count VIII: That the president of the city council and one of Berger's neighbors civilly conspired to deprive Berger of his federal and state rights.

Count IX: That the president of the city council and Berger's neighbor violated 42 U.S.C. § 1982 by conspiring to deprive Berger of his property because of his ethnicity.

Count X: That the City and the president of the council are liable to pay Berger monetary damages.

Count XI: That the amended ordinance denies landowners of their Fourteenth Amendment right to due process by allowing destruction of a landowner's property without prior notice, without a legislative determination thereof, and without sufficient compliance with Ohio Rev.Code § 731.30.

Count XII: That the municipal court judge is proceeding with a criminal prosecution against him without a prior finding of probable cause, in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article I §§ 14 and 16 of the Ohio Constitution.

Berger also moved for injunctive relief and a temporary restraining order. The district court granted the temporary restraining order. The City then entered into a consent agreement with Berger to hold in abeyance the criminal prosecution and the cutting down of the trees and other vegetation on his unimproved lot pending this appeal.

## II. ANALYSIS

### A. Facial Challenge to the Ordinance

■ In Count I of Berger's complaint, he alleges that the ordinance in question violates the Due Process Clause of the Fourteenth Amendment because the ordinance is not rationally related to any legitimate health or safety concern. In Count II of his complaint, he alleges that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it arbitrarily discriminates against the owners of smaller-sized lots with no more than one hundred feet of frontage. The essence of both counts is the claim that no rational relationship exists between the terms of the ordinance and a legitimate governmental purpose. *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (holding that a legislative enactment must bear "a rational relation to some legitimate end" to survive an equal protection challenge); *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 790–91 (6th Cir.1996) (applying rational-basis review in a substantive due process challenge to a legislative act).

The Mayfield Heights City Council did not articulate any such rational relationship, other than to summarily conclude that the ordinance "was necessary for the immediate preservation of the public peace, health, and safety." As for the district court, the total discussion of the alleged rational relationship is expressed in the following two paragraphs of its opinion:

Tall trees can cause damage by falling or dropping limbs. Trash litter and debris such as glass, metal debris, or pieces of cement are unsightly, provide habitat for disease-carrying vermin, and could injure trespassers. Trees and taller brush form structures on which poisonous vines can grow.

. * * *

The Council could have believed that requiring owners of larger lots to clear their land would impose higher costs on the owners, costs that would not be justified in the case of larger lots. The Council might have believed that trees deeply embedded in larger lots would be less likely to fall on public property and cause damage, because of the greater distance from trees to street. The Council might have believed that larger lots could form habitats for larger mammals and a greater variety of wildlife, so that the environmental cost of clearing such lots would exceed the benefits.

We find none of the proffered reasons to be persuasive. While tall trees can indeed cause damage by falling or dropping limbs, this is true regardless of the size lot the tree is on. The same can be said for the point that poisonous vines can grow on trees and taller brush. To argue that trees should be cut down because poison ivy may grow on them strikes us as "throwing out the baby with the bath water." Such justification for the new ordinance sections seems particularly weak in light of the original ordinance language in C.O. 917.14(a) that has long since required landowners to cut or destroy "any

noxious or poisonous weeds or vines growing upon the lot or parcel of land . . . ."

The more focused point that trees deeply embedded in larger lots are less likely to cause damage to public property would be more persuasive if the ordinance required that all trees be removed so many feet back from the public street. But the ordinance cannot be justified on this rationale because both small lots with more than one hundred feet of frontage and larger lots of more than one acre, regardless of frontage, can have trees abutting the very edge of the street, whereas smaller lots with one hundred feet or less of frontage must be clear-cut all the way back to the rear property line. On Berger's lot, for example, this means that even trees several hundred feet back from the street must still be cut to within eight inches of the ground. We find no rational basis for such arbitrary results.

As for trash, litter, and debris being unsightly, providing a habitat for vermin, and injuring trespassers, such discarded items are just as likely to exist on larger lots, or on smaller lots with more than one hundred feet of frontage, as on smaller lots with less than one hundred feet of frontage. In fact, one would rationally assume that *more* such items would exist on the larger lots and ones with greater street frontage than vice versa.

Finally, the rationale relating to the higher clearing costs that would be imposed on owners of the larger lots and the destruction of habitat for larger mammals and other wildlife might be more persuasive if the ordinance applied solely to smaller lots as opposed to larger lots. But such is not the case, because lots considerably smaller than Berger's that happen to have more than one hundred feet of street frontage can remain in their natural uncut state (except for cutting the grass twenty feet back from the street) along with the larger lots. Thus lots like those of Berger with one hundred feet or less of frontage and less than one acre in size are irrationally sandwiched between lots both larger and smaller than his in bearing the financial and environmental costs of being "totally cut."

In sum, we find that neither the City nor the district court have successfully articulat-ed any rational basis to justify the onerous requirements imposed on the owners of vacant lots subject to C.O. 917.14(b) as opposed to the owners of all other vacant lots, and no such rationale is apparent to this court. While the "rational basis" standard is the least demanding test, used by the courts to uphold legislative action, it is not "toothless." *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) (referring to *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), which held that certain provisions of the Social Security Act requiring illegitimate children to satisfy different conditions in order to obtain insurance benefits did not rationally relate to the legitimate goal of avoiding spurious claims); *see also Romer v. Evans,* 517 U.S. 620, 633, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (holding that an Amendment to Colorado's Constitution, which prohibited all legislative, executive, or judicial action designed to protect homosexual persons from discrimination, did not rationally relate to any legitimate governmental interest).

From the above analysis, it is obvious that the district court read the "totally cut" language in C.O. 917.14(b) to require that Berger's lot be cleared of all trees, landscaping, and other growth to a height of not more than eight inches. This understanding was also shared by Berger and never refuted by the City. Though this literal reading appears to be linguistically correct, it makes little sense in light of the City's likely purpose of simply keeping deleterious weeds and debris under control. But even if we were to loosely interpret the "totally cut" requirement as applying only to weeds and debris, it would not save the ordinance in question. While such an interpretation would likely avoid the substantive due process problem of the subsection not being rationally related to any legitimate health or safety concern, such an attempted redemption would still fail because application of the "totally cut" requirement to an arbitrarily selected segment of the City's vacant lots violates the Equal Protection Clause.

■ In conclusion, if C.O. 917.14(b) is applied as it literally reads and as it has been interpreted by the parties and the district

court, then it violates both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. And even if we were to loosely interpret C.O. 917.14(b) as applying only to weeds and debris, it would still violate the Equal Protection Clause because the owners of all other vacant lots are not subject to its requirements. With C.O. 917.14(b) and C.O. 917.14(c) inextricably linked by their language, and because it is not the role of the judiciary to rewrite municipal ordinances, we hold that both sections are null and void due to the constitutional infirmities discussed above.

Needless to say, this holding does not prohibit properly drawn ordinances from regulating the maintenance of vacant lots when the enactment avoids the arbitrary and capricious terms of the one in question. In fact, we doubt that anyone would contend that C.O. 917.14(c) alone lacked a rational basis if it uniformly applied to all vacant lots within the City. Rather, it is the arbitrary and capricious burden placed on the owners of the vacant lots covered by C.O. 917.14(b) as opposed to "[a]ll other unimproved or vacant lots" covered by C.O. 917.14(c) that is the primary cause of the constitutional infirmity in the case before us.

### B. Berger's Other Claims

We have carefully reviewed all of Berger's remaining claims, found in Counts III through XII of his complaint, and find them to be without merit for the reasons set forth in the Memorandum Opinion of the district court. There is no jurisprudential purpose to be served by repeating herein the respective positions of the parties and the district court's ruling on each of such remaining counts. Suffice it to say that summary judgment in favor of the City was appropriate as to these remaining counts either because Berger failed to provide factual support for his allegations or because the controlling law is contrary to his legal positions. Furthermore, we find that Berger will obtain full relief by the new sections of the ordinance in question being declared null and void because the parties agreed to hold in abeyance the criminal prosecution and the cutting

down of trees on Berger's lot until this appeal was decided.

### III. CONCLUSION

For the reasons set forth above, we REVERSE the district court's grant of summary judgment in favor of the City as to Counts I and II of Berger's complaint, and declare the Mayfield Heights Consolidated Ordinance sections 917.14(b) and (c) null and void. We AFFIRM the remaining rulings of the district court.