deprived him of any protected property right is fatal to his lawsuit. Richardson purchased his property long after the defendant enacted the zoning ordinance Richardson challenges. Therefore, there has been no action by the defendant that deprived Richardson of anything; rather, this case is about nothing more than Richardson's unfulfilled desire that the defendant act in a manner favorable to Richardson's business interests. The Due Process Clause is not offended when such aspirations are unrealized. Further, this court needeth not say! I agree that the plaintiff's claims were properly dismissed.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0215P (6th Cir.)
File Name: 00a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT T. RICHARDSON,
    *Plaintiff-Appellant,*

    *v.*                              No. 99-1169

TOWNSHIP OF BRADY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 98-00070—Richard A. Enslen, Chief District Judge.

Argued: March 14, 2000

Decided and Filed: July 5, 2000

Before: RYAN, MOORE, and FARRIS,[*] Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael B. Ortega, REED, STOVER & O'CONNOR, Kalamazoo, Michigan, for Appellant. Michael S. Bogren, PLUNKETT & COONEY, Kalamazoo, Michigan, for Appellee. **ON BRIEF:** Michael B. Ortega, Patricia R.

_____

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Mason, REED, STOVER & O'CONNOR, Kalamazoo, Michigan, for Appellant. Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court, in which FARRIS, J., joined. RYAN, J. (pp. 18-20), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-appellant Robert T. Richardson appeals an order of the district court granting summary judgment to defendant-appellee the Township of Brady (hereinafter "Township") in his action challenging the Township's animal-unit ordinance on grounds of substantive and procedural due process. The ordinance at issue assigns animal-unit equivalencies for certain livestock based upon the odor-producing characteristics of the animal's waste. Richardson, who operates a nursery-swine facility on his property, argues that the animal-unit ordinance bears no rational relationship to the Township's objective of reducing odor because it fails to differentiate between small and large swine.

Mindful of the principle that the Township's ordinance need not be perfectly tailored to its goals, we conclude that the ordinance withstands substantive due process scrutiny. With regard to Richardson's procedural due process claim, we conclude that Richardson has failed to establish the existence of a protected property interest. Accordingly, we **AFFIRM** the district court's grant of summary judgment to the Township on both claims.

## I. BACKGROUND

Robert Richardson owns 194 acres of land within the Township of Brady, on which he operates a nursery-swine facility. Richardson challenges a Township animal-unit

instrument the property owner requests of the zoning body, is a test devoid of intelligibility and indeed a model of circular reasoning. The lead opinion seems to repute that test with respect to the plaintiff's substantive due process claim, and I agree, because the only property interest that need be shown for *any* due process claim is fee simple ownership and the plaintiff has alleged such ownership. Still, my colleagues reject Richardson's procedural due process claim on the grounds that he has not alleged a sufficient property interest while assuming he has shown such property interest for purposes of his substantive due process claim.

I cannot imagine any principled basis for applying a different test for finding a protected property interest sufficient to justify a procedural due process claim than is required to sustain a substantive due process claim; the text of the Due Process Clause certainly makes no such distinction. If one has a property interest in his real estate that is protected under any aspect of the Due Process Clause, surely it must be protected under all aspects. Despite the logical shambles in which the federal courts have left the procedural/substantive distinction in the law of due process, surely it remains true, at least as respects the existence of a property interest in zoning matters, that a landowner cannot have and not have a protected property at the same time. In my judgment, fee simple ownership is sufficient to sustain both procedural and substantive due process claims in zoning matters.

This very different understanding of the nature of the property interest protected by the Due Process Clause than my colleagues brings me, nevertheless, to the same result they have reached. In order to maintain a due process claim, whether procedural or substantive, a plaintiff must demonstrate *both* a protected property interest *and* governmental action that has in some way deprived the plaintiff of a property right. *See Pearson*, 961 F.2d at 1216 n.16. While I have no doubt that Richardson's fee simple ownership of his land is a property interest sufficient to assert a due process claim, whether procedural or substantive, his inability to demonstrate *any* governmental action that

———————————

**CONCURRENCE**

———————————

RYAN, Circuit Judge, concurring.  My distinguished colleagues' lead opinion finds that the plaintiff has no protected property interest for purposes of asserting a procedural due process claim, but assumes that he has one for purposes of a substantive due process claim.  This seems to suggest that there is one kind of property interest protected under the notion of procedural due process and another under the notion of substantive due process.  How can this be?  In my judgment, it cannot be.

There is considerable confusion in the federal courts, and indeed in this circuit, regarding the property interest a plaintiff must assert in order to sustain a claim under the Due Process Clause of the Fourteenth Amendment—confusion the Supreme Court has thus far not dispelled.  *See Silver v. Franklin Township*, 966 F.2d 1031, 1036 (6th Cir. 1992); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1218 n.29 (6th Cir. 1992).  A number of circuits, including our own, seem to recognize a distinction between the kind of property interest afforded substantive due process protection and that afforded procedural due process protection.  *See G.M. Eng'rs and Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 331-32 (6th Cir. 1990).  In my view, there is no logical basis for making such a distinction, at least in connection with real property zoning cases.

For purposes of leveling a Fourteenth Amendment due process challenge to government action affecting the use and enjoyment of privately owned real estate, there can be no greater "property interest" to provide standing to make the challenge than fee simple ownership of the affected land.  The idea expressed in *Silver*, 966 F.2d at 1036, that a property owner, in order to establish a protected property interest sufficient to maintain a due process claim, must demonstrate an "entitlement" or absolute right to the permit or similar

ordinance that has the effect of limiting the number of pigs that he may have on his property to 1,999.  The animal-unit ordinance, which was enacted in 1987, provides:

> *Animal Unit (or Animals Per Animal Unit)*:  For purposes of this Ordinance, an animal unit shall be construed as a unit of measure used to compare relative differences in the odor producing characteristics of animal wastes, with the following equivalencies applicable to various animals:
>
> | | | |
> |---|---|---|
> | A. | Cattle: | 1.00 |
> | B. | Horses: | 1.00 |
> | C. | Swine: | 1.00 |
> | D. | Sheep/Goats | 0.50 |
> | E. | Poultry/Fowl | 0.10 |
>
> The equivalency for types of livestock not specifically listed above shall be the stated equivalency for the type of animal which is most similar in terms of odor producing characteristics of animal wastes, as determined, if necessary, by the Zoning Board of Appeals.

Joint Appendix (hereinafter "J.A.") at 210.  Property that is zoned "AG," for agricultural use, may permissibly contain up to 300 animals.  Owners of property zoned for agricultural use may obtain a special exception use permit for an intensive livestock operation.  An "intensive livestock operation" is defined as:

> Any farm or farm operation engaged in raising, breeding, or feeding beef or dairy cattle, horses, swine, sheep, goats, poultry/fowl, turkeys/ducks, or other livestock in concentrations of 300 or more animal units, including any buildings, structures, excavations, or enclosed areas directly involved therein, including land used for pasture or feedlot purposes, and any animal waste storage structures, excavations or areas directly connected to or associated with such operations.

J.A. at 211. Applicants for a special exception use permit for an intensive livestock operation who comply with certain requirements may maintain more than 300 animal units on their property. According to the special exception use provisions, "AG" property located at least 2,640 feet but less than 5,280 feet from property zoned other than "AG" is limited to "less than 2,000 animal units." J.A. at 216-17.[1] "AG" property located at least 5,280 feet from property zoned other than "AG" may contain more than 2,000 animal units, but no more than 10,000 animal units. J.A. at 217, 223.

In January of 1997, Richardson told the township supervisor of his interest in establishing a nursery-swine facility on his property. A nursery-swine facility is part of a three-step operation that begins with newly born pigs and ends with hogs ready for market. Pigs arrive at a nursery-swine facility when they are between fourteen and eighteen days old, weighing between eight and twelve pounds. They depart the nursery-swine facility at the age of nine weeks, at a weight of about fifty to fifty-five pounds. At this age they are taken to a finishing facility, where they stay until they are ready for slaughter.

Because he believes that an economically viable nursery-swine operation must house approximately 4,200 pigs, Richardson suggested to the township supervisor that he would seek to obtain an "interpretation/variance" from the Township Zoning Board of Appeals regarding the definition of animal unit so as to allow a nursery-swine operation at his site. Richardson was told that a better approach would be to seek an amendment to the zoning ordinance text, and the township supervisor prepared proposed amendments to the animal-unit definition that included a provision that nursery swine (defined as swine weighing less than fifty-five pounds) would have an animal-unit equivalency of .50. A public hearing on the proposed text change was conducted on January 30, 1997. The vote on the amendment by the Brady

---

[1] Richardson's property apparently fits into this category.

mandatory requirements, then Silver would not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan." (quotation omitted)).

Richardson really seems to be arguing that he has a property interest in the procedures themselves, and that by failing swiftly to execute its procedures the Township has deprived him of that property right without due process. *See* Appellant's Br. at 27 ("Plaintiff's procedural due process right . . . is the right to have the Township follow the procedures set forth in the applicable zoning enabling act . . . . He was deprived of these rights by the Township."). However, Richardson can have no protected property interest in the procedure itself. *See United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992) (holding that a "disappointed bidder" to a government contract did not have a property interest in the State's purchasing guidelines, and so suffered no due process violation when the State failed to comply with its own procedure in awarding the bid; "A 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded."); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1110 (6th Cir. 1995) (citing *United of Omaha* for this proposition).

Because Richardson has not identified a protected property interest, the district court properly dismissed his procedural due process claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to the Township on Richardson's substantive and procedural due process claims.

If Richardson's claim is that he was deprived of a text amendment or "interpretation" without due process, he cannot show that he has a protected property interest in such an amendment. Simply put, Richardson can have no legitimate claim of entitlement to a discretionary decision.[6] *See, e.g., Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir.) (explaining, in the context of a substantive due process claim, that the plaintiff had no property interest in a special use permit because the City Council had the discretion to grant or deny such a permit), *cert. denied*, 516 U.S. 816 (1995); *Silver v. Franklin Township*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("If the Board had the discretion to deny Silver a conditional zoning certificate for a condominium complex even if he complied with certain minimum,

---

land is a property interest sufficient to assert a procedural due process claim, although he believes that Richardson has failed to demonstrate a governmental action that deprived him of this property interest. We agree with Judge Ryan that Richardson's fee simple ownership could constitute a cognizable property interest; however, we simply do not understand Richardson to contend that he has been denied any of the rights of property ownership without due process of law. If Richardson had argued, for example, that the Township rezoned his property without affording him due process, then his fee simple ownership would undoubtedly have been sufficient to support his procedural due process claim.

This explanation should suffice to refute Judge Ryan's characterization of our opinion as "applying a different test for finding a protected property interest sufficient to justify a procedural due process claim than is required to sustain a substantive due process claim." *Post*, at 19. Once again, although we agree that Richardson's land ownership could indeed sustain a procedural due process claim, we believe that Richardson has failed to state a claim on that basis.

[6]Richardson alleges that, after the Township Planning Commission first declined to amend the animal-unit ordinance, he received assurances by members of the Township Board and the Township Planning Commission that action would again be taken to amend the definition within a reasonable amount of time. It was based on these assurances, Richardson alleges, that he applied for a special use permit and began his nursery-swine facility. However, Richardson does not seem to claim that Township officials guaranteed that the text would be amended, only that further action would be taken.

---

Township Planning Commission was equally divided, so the amendment failed.

Despite the failure of the proposed amendment, Richardson claims that he was assured by members of the Township Board and the Township Planning Commission that action would be taken to amend the animal-unit definition. In anticipation of this amendment, Richardson applied for a special exception use permit to establish a nursery-swine facility on his property. The special exception use permit was granted on February 20, 1997, permitting Richardson to operate a nursery-swine facility involving not more than 1,999 animal units.

In August of 1997, Richardson filed an application for a text change to the animal-unit ordinance, proposing that nursery swine be counted as .40 of an animal unit. Richardson subsequently withdrew this request, allegedly because several members of the Township Planning Commission informed him that they would shortly move to amend the provision on their own initiative. On January 29, 1998, the Township Planning Commission again considered a text amendment, which proposed that swine over fifty-five pounds be treated as one animal unit, while swine under fifty-five pounds be treated as .50 of one animal unit. Richardson claims that the Township Planning Commission recommended approval, but that the Township Board sent the text amendment back to the Planning Commission for further work.

On February 16, 1998, Richardson filed a request with the Zoning Board of Appeals for an interpretation regarding the animal-unit definition as it pertained to nursery swine. However, the Township Board attorney, in a letter to the township supervisor, indicated that Richardson's "request for a text change . . . is not within the statutory jurisdiction of the Zoning Board of Appeals." J.A. at 425 (Letter from Craig A. Rolfe to George Parker). No action on Richardson's request has been taken. On March 4, 1998, Richardson received a civil infraction citation for violating the conditions of his

special exception use permit by housing more than 1,999 pigs on his property. That enforcement action is still pending.

Richardson then filed the instant action in the Circuit Court for the County of Kalamazoo. His complaint alleged that the Brady Township animal-unit ordinance, both on its face and as applied, violated his right to equal protection and due process and that it effected a taking of his property without just compensation, all in violation of the United States and Michigan Constitutions. The Township removed the case to the United States District Court for the Western District of Michigan.

On January 20, 1999, the district court granted the Township's motion for summary judgment. The district court considered Richardson's substantive due process and equal protection claims together, explaining that the inquiry for both was whether the ordinance was rationally related to a legitimate governmental interest. The district court easily rejected Richardson's facial substantive due process and equal protection challenge, reasoning that "[r]educing odor is a legitimate end of government zoning action," and that "it is also rational to determine . . . that swine are animals which should be treated as prime smell-producers, and should be weighed as an entire animal unit." J.A. at 634 (D. Ct. Op.). With regard to Richardson's "as applied" substantive due process and equal protection challenge, the district court explained that "[t]he Plaintiff's desire that the Township consider his swine as fractional animal units based on their smaller size is understandable." J.A. at 635 (D. Ct. Op.). The district court concluded, however, that the Township's failure to distinguish between swine of different sizes was not irrational in relation to its goal of odor reduction. The district court reasoned that "[l]imiting the number of swine, of any size, is a rational means of controlling odors," despite the fact that the Township's method might not be perfectly tailored to its ends. J.A. at 636 (D. Ct. Op.). The district court next explained that Richardson had not demonstrated the existence of a protected property interest sufficient to support a procedural due process claim. Finally, the district court

dismissed Richardson's procedural due process claim on the basis that Richardson failed to identify a cognizable property interest.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). In order to state a successful procedural due process claim, therefore, Richardson must establish the existence of a protected property interest. An abstract need or unilateral expectation does not suffice to create a property interest; rather, a person must "have a legitimate claim of entitlement." *Id.* at 577. The Supreme Court has explained that the Constitution does not create property interests: "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Although Richardson does not state with clarity what property interest he has allegedly been denied, he must be arguing either that the procedures used to deprive him of his property interest in the text amendment or "interpretation" were inadequate (because unacceptably slow), or that he has a property interest in having the Township follow through with its procedures. On either theory, Richardson's procedural due process claim must fail.[5]

---

Ordinance does authorize the ZBA to determine the animal unit equivalency "for types of livestock not specifically listed." However, this definition does specifically list an animal unit equivalency for the type of livestock at issue here — swine. Thus, Mr. Richardson's request may not fall within the catch-all paragraph authorizing the ZBA to make certain determinations as to animal unit equivalencies.
J.A. at 425-26 (Letter from Craig A. Rolfe to George Parker).

[5] In his concurring opinion, Judge Ryan has expressed a different understanding of the nature of Richardson's procedural due process claim. Judge Ryan explains that Richardson's fee simple ownership of

distinction that served no conceivable purpose. In the instant case, on the other hand, the Township's distinctions are not irrational. As we have explained, the assignment of the same animal-unit equivalency to all like animals regardless of weight is rational in light of the Township's administrative concerns.

Richardson has presented no evidence showing that there is a genuine issue as to whether the Township's animal-unit ordinance, as applied to his nursery-swine facility, is rationally related to its legitimate interest. Consequently, summary judgment on this claim was proper.

## B. Procedural Due Process

There are two components to Richardson's procedural due process argument. First, he alleges that he was deprived of procedural due process because of the Township's delay in processing his requested text amendment. As we noted earlier, on January 29, 1998, the Township Planning Commission considered the amendment for a second time and approved it, but the Township Board sent the amendment back to the Commission for further work. Richardson asserts that Michigan law provides a process for zoning ordinance adoption, and that "the Township has stalled the text amendment review process *for over a year*." Appellant's Br. at 23 (emphasis in original). Second, Richardson takes issue with the Township Board of Zoning Appeals's failure to process his request to "interpret" the animal-unit ordinance. Richardson contends that, although the Township Board of Zoning Appeals had jurisdiction to interpret the animal-unit ordinance and to grant a variance, the Township Board attorney improperly instructed the Board of Zoning Appeals to refuse to provide an interpretation.[4] The district court

---

[4]In his letter to the township supervisor, the Township Board attorney wrote:

> In my opinion such a request is, in effect, a request for a text change that is not within the statutory jurisdiction of the Zoning Board of Appeals. The definition of "animal unit" in the Zoning

concluded that Richardson's takings claim was premature because Richardson had not utilized the State of Michigan's procedures for seeking just compensation. The district court therefore dismissed Richardson's federal constitutional claims, and remanded his state constitutional claims to state court. We have jurisdiction over this timely appeal of the district court's grant of summary judgment pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

We review de novo an order of the district court granting summary judgment. *See Mayhew v. Allsup*, 166 F.3d 821, 822 (6th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). On review of a summary judgment grant, we view the evidence and draw all reasonable inferences therefrom in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A. Substantive Due Process[2]

We have recognized that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). A local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose. *See Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998); *see also Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992) ("Under [a substantive due process] analysis, an

---

[2]Although Richardson raised substantive and procedural due process, takings, and equal protection claims below, he presses only his substantive and procedural due process claims on appeal.

ordinance or regulation is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest."); *Pearson*, 961 F.2d at 1223 (noting that in substantive due process review of a zoning ordinance, "the only permissible inquiry" for a federal court is "whether the legislative action is rationally related to legitimate state land use concerns").

A zoning ordinance may be challenged as violative of substantive due process either on its face or as applied to a particular parcel of land. *See Pearson*, 961 F.2d at 1216. When a landowner makes a facial challenge to a zoning ordinance, "he or she argues that *any* application of the ordinance is unconstitutional." *WMX Techs., Inc. v. Gasconade County*, 105 F.3d 1195, 1198-99 n.1 (8th Cir. 1997). "When one makes an 'as applied' challenge, he or she is attacking only the decision that applied the ordinance to his or her property, not the ordinance in general." *Id.* In his brief, Richardson makes both types of substantive due process challenges.[3]

**1. Facial Challenge**

We must first determine whether the ordinance at issue addresses a legitimate governmental interest. The language of the Township's animal-unit ordinance makes its purpose clear — it assigns an animal-unit equivalency to each type of

---

[3]In his concurring opinion, Judge Ryan objects that we reach the merits of Richardson's substantive due process claims without consideration of whether he has a sufficient property interest although we conclude he lacks such an interest for his procedural due process claims. While we recognize that the property interest standard ought to be clarified, as Judge Ryan suggests, we decline to do so in this case. Neither party briefed this issue, either on appeal or before the district court, the decision appealed from does not address this issue, and the substantive due process claims may be resolved on other grounds. *Cf. Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1576 (10th Cir. 1995) (recognizing that property interest should ordinarily be decided first but assuming without deciding that plaintiff had property interest and reaching underlying constitutional issue).

destroy "noxious or poisonous weeds or vines" to prevent them from exceeding a height of eight inches. *Id.* at 623. After the plaintiff's neighbor complained to the City Council about the fact that the plaintiff kept his vacant lot in its "natural" state, the City amended its ordinance to add the following provisions:

> (b)  Existing lots fronting on a right-of-way and having a width of not more than 100 feet and a total area of less than one acre shall be totally cut and maintained to a height of not more than eight inches.
> (c)  All other unimproved or vacant lots shall be cut and maintained free of any growth, exclusive of trees or landscaping, to a height of not more than eight inches for a distance of not less than twenty feet from any right-of-way.

*Id.* at 623.  Not surprisingly, the plaintiff's vacant lot had a width of 100 feet and was 42,062 square feet in size, thus bringing it within the ambit of subsection (b). *See id.*  The plaintiff challenged the ordinance, arguing that there was no rational relationship between the terms of the ordinance and the legitimate governmental interest of preserving the public health and safety.  We agreed, explaining that there was simply no logical reason to justify treating vacant lots having a width of not more than 100 feet and a total area of less than one acre differently than all other vacant lots. *See id.* at 625.

Again, Brady Township's need for ease of administration distinguishes the instant case from *Berger*.  In *Berger*, while we acknowledged that the City might have had legitimate reasons for differentiating between larger lots and smaller lots, such as a belief that requiring owners of larger lots to clear their land would impose higher costs on the owners, we concluded that the City's distinctions did not rationally advance these purposes.  Instead, the City's ordinance resulted in a scheme in which "lots like those of Berger with one hundred feet or less of frontage and less than one acre in size [were] irrationally sandwiched between lots both larger and smaller than his." *Id.*  The ordinance therefore drew a

animal based on the "relative differences in the odor producing characteristics of animal wastes." In conjunction with other provisions of the Township zoning plan that limit the number of animal units that may be kept on property zoned "AG," the purpose of the ordinance is to reduce odor so that neighboring property owners will not be offended by the smell. This is undoubtedly a legitimate governmental purpose, *see, e.g., Village of Belle Terre v. Boraas*, 416 U.S. 1, 9 (1974) (holding that the goals of reducing traffic and noise are legitimate governmental interests), and Richardson does not seriously contend otherwise.

Richardson instead focuses his argument on the contention that the ordinance is an unreasonable means of advancing the Township's legitimate interest. However, the Township's determination that one pig should be treated as one entire animal unit, just as one cow and one horse are treated as one unit, is not an irrational means of advancing the Township's goal of odor reduction. While swine may produce less waste than cows and horses, it is not irrational to base animal-unit equivalencies on offensiveness of waste rather than relative quantity produced. In fact, the Township Planning Commission considered basing equivalencies on relative waste produced, but abandoned that idea. J.A. at 567 (proposing an equivalency of 2.0 for a horse, 1.4 for a mature dairy cow, .4 for a pig, .10 for a sheep, and .05 for fowl); J.A. at 495 ("[W]hile the initial equivalencies were based on relative quantity of animal waste produced by various species of animals[,] [t]he equivalencies proposed in this draft are designed by the differences in the odor producing characteristics of animal waste."). We conclude, therefore, that Richardson's facial challenge fails because Brady Township's animal-unit ordinance advances a legitimate governmental interest and because the ordinance is a rational means of doing so.

### 2. As Applied Challenge

Richardson next claims that the ordinance as applied to his nursery-swine operation is arbitrary and irrational, thus

neighborhood." *Id.* at 1242-43. We also explained that the means employed by the City to address these concerns were reasonable on their face, as "[t]he concerns addressed by the ordinance are implicated when the number of cars parked on the premises significantly exceeds the servicing capabilities of the business." *Id.* at 1243. Nevertheless, we found that a factual question existed as to whether the ordinance was unreasonable as applied because the figure of three cars per bay bore no relationship to the problems that the ordinance was designed to correct:

> Carrying the ordinance to its "illogical" extreme, it could limit the number of automobiles to three per bay on the premises of a two-bay operation, even if ten acres of parking space was available, and average servicing capabilities would accommodate significantly more automobiles than the limits imposed by the ordinance. This suggests the possibility that the ordinance could be arbitrary and unreasonable as applied to Curto.

*Id.* at 1244.

In *Curto*, the City's failure to consider the size of the area being regulated rendered the ordinance so inexact as to raise the possibility that it was not rationally related to the City's goals as applied to Curto. In the instant case, however, the Township's failure to consider the weight of swine in determining animal-unit equivalencies does not raise the same possibility of arbitrariness. If the Township were to treat swine differently depending on weight, the result would be a scheme considerably more difficult — and more costly — to administer. This need for ease of administration, which was not present in *Curto*, provides a rationale for the Township's application of the same animal-unit equivalency to all swine and thus distinguishes the instant case.

Richardson next analogizes his situation to the one presented in *Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998). In *Berger*, the City of Mayfield Heights had an ordinance, which had been in place for thirty-five years, that required owners of land within City limits to cut or

violating his right to substantive due process. He argues that the Township's determination of the swine animal-unit equivalency without regard to the size of the swine means that the animal-unit ordinance bears no rational relationship to odor control. His argument, in essence, is that full-grown hogs produce more waste than nursery swine, so that it is unreasonable to refuse to treat nursery swine differently.

We hold that the Township's ordinance is not arbitrary as applied to Richardson. As we have just explained, the Township could have rationally concluded, as the district court put it, that pigs are "prime smell-producers," and accordingly assigned pigs an animal-unit equivalency of one. Although taking the weight of pigs into account in determining their animal-unit equivalencies might result in an ordinance more narrowly tailored to the Township's goal of reducing odor, the fact that the Township chose not to do so does not mean that its ordinance is irrational. We have repeatedly stated that "[a] legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals." *Schenck v. City of Hudson*, 114 F.3d 590, 594 (6th Cir. 1997); *see also Interstate Towing Ass'n, Inc. v. City of Cincinnati*, 6 F.3d 1154, 1166 (6th Cir. 1993) ("[T]he City need not show that its ordinance provides the best means for achieving its stated ends, only that these means are rational in view of its goals.").

There is evidence in the record that the Township Planning Commission considered assigning swine varying animal-unit equivalencies based on weight, but that it rejected doing so because such a program would be difficult to administer. At the public hearing on the proposed intensive livestock operation provisions held on October 22, 1987, a citizen objected to the treatment of all swine as one animal unit, and in response the Planning Commission chairperson explained that "we had a long discussion of who was going to go out and weigh the pigs." J.A. at 502, 508. This administrative concern was echoed at a special meeting of the Planning Commission to vote on the proposed ordinances. J.A. at 530.

A municipality's consideration of administrative concerns such as these is entirely rational, and does not render an ordinance constitutionally infirm.

It may well be true, as Richardson claims, that there is a "huge and obvious difference between the odor-producing characteristics of nursery swine and full-grown hogs." Appellant's Br. at 18. On this reasoning, however, not only would it be irrational for the Township not to distinguish between pigs less than fifty-five pounds and pigs greater than fifty-five pounds, but it would also be irrational to fail to distinguish further gradations. Furthermore, there are other factors — such as diet — that may affect the odor-producing characteristics of animal waste, but surely the Township need not take all such factors into account in determining animal-unit equivalencies. We agree with the district court that "[l]imiting the number of swine, of any size, is a rational means of controlling odors," even though it may not be the perfect means. J.A. at 636 (D. Ct. Op.).

Of course, an ordinance can be so crudely designed as to wholly miss the mark, and Richardson argues that this is such a case. Analogizing to two of our precedents, Richardson argues that a factual dispute exists as to whether the animal-unit ordinance is rationally related to the Township's goal of reducing odor. However, we do not find Richardson's analogies persuasive.

Richardson first cites *Curto v. City of Harper Woods*, 954 F.2d 1237 (6th Cir. 1992), a case involving an ordinance that limited the number of vehicles that a service station could allow to be parked on its premises to three per service bay, regardless of the size of the parking lot. The interests said to be served by the ordinance, which we deemed legitimate, were "preventing unsightliness caused by wrecked vehicles, preventing traffic congestion and overflow of parked vehicles into surrounding properties or the street, controlling harmful fumes and odors, reducing the risk of fire hazards, ensuring adequate ingress and egress by emergency vehicles, and preserving the aesthetic value of the property and surrounding