File Name: 07a0370n.06
Filed: May 31, 2007
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-1144

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

LUCRE, INC.,

    Plaintiff-Appellant,

v.

MICHIGAN BELL TELEPHONE CO., d/b/a SBC
MICHIGAN,

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

_____ /

Before:      MARTIN, NORRIS, and GIBBONS, Circuit Judges.

**OPINION**

BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiff Lucre, Inc. filed suit in the district court

to challenge the decisions of the Michigan Public Service Commission dismissing its complaint and

denying its motion to reopen and enlarge the record.  Lucre had submitted a claim to the Commission

against defendant SBC Michigan, alleging that SBC breached the parties' interconnection agreement.

Before the district court, Lucre alleged that the Commission's decision on the merits was arbitrary

and capricious, and that the Commission's denial of its request to reopen the record amounted to a

due process deprivation in violation of the Fourteenth Amendment.  The district court denied both

of Lucre's claims, and Lucre now appeals.

I.

The newcomer to Telecommunications Act jurisprudence might wonder why an appeal from

a state agency can be brought in federal court. We have previously explained this unique procedural

mechanism, and have little reason to plow the field anew:

> To deregulate the telephone industry, Congress enacted the Telecommunications Act of 1996, codified in 47 U.S.C. Section 251 et seq. The Act has been called one of the most ambitious regulatory programs operating under "cooperative federalism," and creates a regulatory framework that gives authority to state and federal entities in fostering competition in local telephone markets. We have often reiterated the Act's purposes, which are ending local telephone company monopolies and promoting competition in local telephone markets. *E.g., Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 582 (6th Cir. 2002).
>
> The Act encourages competitive local telephone markets by imposing several duties on incumbent local exchange carriers, the telephone companies holding monopolies in local markets prior to the Act's implementation. The incumbent must negotiate or arbitrate agreements with competing local carriers, the new entrants into the deregulated market, by providing one of three methods of competition: 1) the incumbent carrier must provide interconnection to its network to a competing carrier that builds or has its own network, 47 U.S.C. § 251(c)(2); (2) the incumbent carrier must provide access to its network elements on an "unbundled basis" to a competing carrier wishing to lease all or part of the incumbent's network, rather than build its own, 47 U.S.C. § 251(c)(3); and (3) the incumbent must sell its retail services at wholesale prices to a competing carrier that will resell the services at retail prices. 47 U.S.C. § 251(c)(4).
>
> Interconnection agreements set forth terms, rates, and conditions of the arrangements between the incumbent local exchange carrier and a competing local exchange carrier. The Act provides for arbitration of an agreement, review of arbitrated or negotiated agreements, and judicial review of agreements. State utility commissions review and give final approval to interconnection agreements. 47 U.S.C. § 252(e)(1); § 252(e)(2)(A); *Verizon Md. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S. Ct. 1753, 1756, 152 L. Ed. 2d 871, 878 (2002). A party aggrieved by a commission decision may bring suit in federal district court to review whether the agreement or statement of terms complies with the Act. 47 U.S.C. § 252 (e)(6); *Verizon Md.*, 122 S. Ct. at 1758.

*Mich. Bell Tel. Co. v. MCI Metro Access Transmission Servs.*, 323 F.3d 348, 353 (6th Cir. 2003).

Under this somewhat complex framework, the federal courts employ a hybrid standard of

review, depending upon the issue presented in an appeal from a state agency decision. On the one hand, this Court reviews state agency interpretations of the Telecommunications Act de novo, "according little deference to the Commission's interpretation of the Act." *Id.* at 354. On the other hand, state agency findings of fact are reviewed under the arbitrary and capricious standard, which this Court has described as "the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole." *Id.* Adding another unique ingredient to the mix, the federal courts have supplemental jurisdiction "to review state commission interpretations for compliance with state law," when the state law questions share a common nucleus of operative fact with the claims brought under the Act. *Id.* at 357. Unlike a state agency's interpretation of the Act, this Court "give[s] deference to a state commission's resolution of state law issues and applies an arbitrary and capricious standard in our review." *Id.*

In this case, we have jurisdiction to review the state agency's decisions as set forth in *MCI Metro*. The issue on appeal turns primarily on interpretation of the interconnection agreement under Michigan law, however, calling for review of the Commission's decision under the arbitrary and capricious standard. The parties agree that Lucre's constitutional due process claim is subject to de novo review. *See Coalition for Fair & Equitable Regulation of Docks v. FERC*, 297 F.3d 771, 778 (8th Cir. 2002).

## II.

The following factual background is taken from the district court's opinion:

Pursuant to the Telecommunications Act of 1996, specifically 47 U.S.C. § 252(a), Plaintiff and Defendant Michigan Bell Telephone Company ("Michigan Bell") executed an interconnection agreement, wherein Plaintiff contracted to connect its telecommunications network to Defendant Michigan Bell's local exchange network. The interconnection agreement was approved in May 1999, and actual network linkage began in June 1999. Plaintiff and Defendant Michigan Bell interconnected their networks through a joint Synchronous Optical Network ("SONET") ring.[1] The parties' dispute began over multiplexing fees.[2]

Section 3.2.4 of the interconnection agreement provides:

> Based on the physical architecture and Reciprocal Compensation arrangements that the Parties agree to in this Agreement, each Party shall be responsible for establishing and maintaining certain physical facilities and logical trunking necessary for Interconnection. Each Party shall provide, at its own expense, the physical facilities and logical trunking on its side of the common physical meet point with respect to each Interconnection which provides for the transmission, routing and termination of Telephone Exchange Service traffic and Exchange Access traffic to their respective Customers. Such facilities and logical trunking shall be provided on a basis consistent with the standards set forth in this Agreement. Lucre may purchase such facilities from Ameritech at the rates set forth at Item V of the Pricing Schedule. Any Interoffice Transmission Facilities purchased by Lucre from Ameritech for such transmission shall be at the rates for Dedicated Interoffice Transmission Facilities.

According to Plaintiff, it discovered that it had inadvertently failed to bill Defendant Michigan Bell for multiplexing services. Predictably, Defendant Michigan Bell denied owing Plaintiff for multiplexing. Plaintiff's administrative complaint sought recovery of these fees.

---

[1]A SONET is a standard protocol for transmitting calls over fiber optic cable on one network or transmitting calls over fiber optic cable between two different networks. A SONET passes light back and forth over fiber cable in lockstep with a master clock so transmissions will arrive and depart neither lost nor jumbled. Harry Newton, NEWTON'S TELECOM DICTIONARY 736 (2003).

[2]Multiplexing describes the process whereby multiple signals are transmitted over a single line or separating multiple signals from a single line to multiple lines. Newton, *supra* note 1 at 527. In the context of this case, Plaintiff seeks to charge Defendant Michigan Bell for calls that originate on Defendant Michigan Bell's network and terminate on Plaintiff's network.

> Although Plaintiff's administrative complaint contained several counts, the parties mediated the dispute and the Commission perceived only one issue before it: whether Plaintiff could charge Defendant Michigan Bell for multiplexing telephone calls during the course of Plaintiff and Michigan Bell's interconnection agreement. The Commission ordered that Plaintiff could not charge for multiplexing. The Commission also subsequently denied Plaintiff's petition for rehearing and reopening.

D. Ct. Op. at 1-3.

In affirming the Commission's decision, the district court agreed that the contract is ambiguous with regard to payment for multiplexing services, despite Lucre's argument that the plain language of the agreement provided for billing of such services. For this reason, it rejected the plaintiff's argument that the Commission's decision was arbitrary and capricious for looking beyond the plain meaning of the agreement, as Michigan law endorses such an approach to interpreting an ambiguous contract. Even though Lucre posited a potentially reasonable interpretation of the contract's application to multiplexing fees, given the facial ambiguity, the past practices of the parties, and the meaning ascribed to certain terms by the parties in other portions of the agreement, the district court determined that the Commission's decision was reasonable and affirmed it accordingly.

The district court also denied Lucre's due process claim, ruling that it had articulated no protectable property or liberty interest and that its opportunity to be heard was adequate nonetheless.

## A. Does the plain language of the interconnection agreement cover billing for multiplexing services?

Lucre continues to argue on appeal that the Commission and the district court ignored the "plain meaning" of the agreement, which it contends provides for billing for multiplexing. In ruling

that the plain language of the interconnection agreement did not provide for multiplexing fees, the Commission and the district court focused primarily on section 3.2.4, quoted above, as supporting SBC Michigan's position. That section provides in pertinent part that "each Party shall be responsible for establishing and maintaining certain physical facilities and logical trunking necessary for Interconnection," and that "each Party shall provide, at its own expense, the physical facilities and logical trunking necessary on its side of the common physical meet point with respect to each Interconnection which provides for the transmission, routing, and termination of Telephone Exchange Service traffic and Exchange Access traffic to their respective Customers."

The meaning of these provisions does not jump off the page to the non-telecommunications expert, underscoring the wisdom of the policy that requires federal courts to defer to the expertise of state commissions in these types of cases. The Commission concluded that multiplexing services "are essential for the proper transportation and delivery of a usable signal to customers," and that multiplexing services were "necessary in order to complete calls on their respective sides of the joint SONET ring." This conclusion, and the ruling that Lucre had to pay for multiplexing services itself, is certainly not contravened by the plain meaning of the agreement, as Lucre contends. It in fact appears to be supported by this contractual language and is not, at a minimum, an arbitrary and capricious decision.

Lucre points to additional portions of the agreement on appeal, contending that they provide support for its position on multiplexing fees. First, it points to Recital E at the very beginning of the 100-plus page agreement, which provides that "[t]he Parties are entering into this Agreement to set forth the respective obligations of the Parties and the terms and conditions under which the Parties

will interconnect their networks and facilities and provide to each other Telecommunications Services as required by the Act as set forth herein." This vague statement of purpose does nothing to counter the proposition that both parties might be responsible for their own multiplexing fees and is irrelevant to the specific issue challenged by Lucre here.

Next, Lucre points to section XXVII.1 of the agreement, which provides that "[e]ach party will bill all applicable charges, at the rates set forth herein, in the Pricing Schedule and as set forth in applicable tarriffs or contracts referenced herein, for the services provided by that Party to the other Party . . . ." Again, this extremely generalized statement does not indicate whether multiplexing is an applicable charge or a service provided by Lucre to SBC Michigan. Although Lucre asks us to find that it would be covered by such a definition, such a ruling would amount to a substitution of our judgment for the expertise of the Commission. The language of the statute and its cooperative federalism approach simply do not support such a reading with that level of specificity.

Finally, Lucre points to a pricing schedule, appended to the agreement, which references multiplexing. According to SBC, this schedule is merely a list of prices, and does not amount to an authorization to bill. Moreover, this schedule does not appear to provide for rates at which Lucre can bill SBC. To the contrary, the schedule is referenced in section 3.2.4 (the section relied upon by the Commission) which states that "Lucre can purchase such facilities from Ameritech at the rates set forth at Item V of the Pricing Schedule." Based on the manner in which it is referenced in the main body of the agreement, the schedule appears to us to have nothing to do with Lucre's billing of SBC.

In short, Lucre points to nothing in the plain language of the agreement that undermines the holdings of the Commission or the district court. We therefore affirm those decisions with respect to the issue of billing for multiplexing services.

## B. Due Process

Lucre also argues that the Commission violated its due process rights by refusing to reopen the administrative record to allow it to introduce evidence of its own course of performance and of AT&T Michigan's invoicing for multiplexing. In denying these requests, the Commission reasoned that "Lucre should have realized at the time that it filed its complaint that the explanation of its failure to bill SBC for nearly four years could have a significant effect on the outcome of this proceeding."

Lucre's due process argument fails at the outset under the state action requirement. In order to raise a due process claim, a party must have a property or liberty interest of which it is deprived by **state action**, as the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) ("[A]ction inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States."). The only alleged property rights here were Lucre's rights under the interconnection agreement, and these rights could only be said to have been "deprived" by SBC Michigan, not by the Commission. SBC Michigan is a private company rather than a state actor, and Lucre has not alleged facts that would render it a state actor here. *Cf. Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) ("A private actor may be considered a person acting under

color of state law (a state actor) if (1) the deprivation complained of was caused by the exercise of some right or privilege created by the state and (2) the offending party acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."). The Supreme Court has also "consistently held that the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Thus, even assuming that Lucre would have a property right in the interconnection agreement by operation of Michigan law that provides for the enforcement of contracts,[3] the deprivation of that contractual right by a private entity — i.e. SBC Michigan's alleged refusal to comply with the contract — simply does not implicate due process concerns. *See also Paul v. Davis*, 424 U.S. 693, 710-11 (1976) (liberty and property "interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.").

Perhaps recognizing the futility of its due process claim raised against SBC Michigan, Lucre turns its guns toward the Commission, which is of course a state actor. It argues that the Commission deprived it of due process by refusing to reopen the record. Lucre's "right to be heard"

---

[3]*See Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("A cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."). This rule would only appear to go to a state's abolition of a cause of action, rather than conduct by a private party that gives rise to the cause of action, but we need not delve into the nuances of this distinction to address Lucre's claim here.

by reopening of the record might amount to a "procedural right," but cannot constitute a property right. *See Richardson v. Township of Brady*, 218 F.3d 508, 518 (6th Cir. 2000) (A party "can have no protected property interest in the procedure itself.").

Thus, Lucre's due process claim is essentially missing a critical link. Although Lucre articulates a property right that is tied to its claim for breach of contract, this right was denied by a private actor, not by the state. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."). The state actor that it does identify — the Commission — cannot be said to have denied it of any property right. (Not to mention the fact that the Commission is not and never has been named as a party). Without a connection between the deprivation and the property right in question, Lucre's due process claim fails.

III.

For the foregoing reasons, we affirm the district court's dismissal of Lucre's claims.