NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0372n.06

Case No. 21-3722

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Sep 13, 2022

DEBORAH S. HUNT, Clerk

SCOTT D. CREECH,

    Plaintiff-Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, et al.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

OPINION

Before:  DONALD, BUSH, and NALBANDIAN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  Plaintiff Scott Creech appeals from the

district court's opinion and order granting summary judgment in favor of Defendant Ohio

Department of Rehabilitation and Correction ("ODRC").  On appeal, Creech argues that (1) the

district court erred in finding that he failed to present a genuine dispute on his claim under Title II

of the Americans with Disabilities Act ("ADA"); and (2) the district court erred in concluding that

ODRC is entitled to immunity under the Eleventh Amendment. For the reasons stated below, we

affirm the district court's grant of summary judgment for ODRC on ADA grounds alone.

## I.  BACKGROUND

Creech is currently an inmate at the Chillicothe, Ohio, Correctional Institution ("CCI"),

which is operated by the Ohio Department of Rehabilitation and Correction ("ODRC").  He has

been an inmate at CCI since 2008.

In June 1988, Creech was involved in a motorcycle accident, which resulted in him receiving Social Security disability benefits.[1] Then, in 1999, after another motorcycle crash, Creech was flown by helicopter to Grant Medical Center in Columbus, where he was hospitalized for 31 days. Creech suffered a brain hemorrhage, a separated AC joint in his right shoulder, multiple rib fractures, a spinal compression fracture, and various other injuries.[2] At his deposition, Creech testified that he was placed in a medically induced coma for two weeks and that his torn ACL was never surgically repaired.

During his recovery from the 1999 crash, Creech was prescribed painkillers and a cane. In the years immediately following the crash, Creech would always keep the cane with him on the street so that he could use the cane whenever he needed. Creech was prescribed a cane again in 2006, which he continued to carry in his car and use periodically as needed.

Creech found himself back in ODRC custody in 2008. Creech's cane was taken before he was transferred to CCI in December 2008. By 2012, Creech was reissued a cane by CCI medical staff, and, due to his shoulder injury that stemmed from the 1999 crash, he also had a bottom-bunk restriction. The cane and the bottom-bunk assignment were issued as medical restrictions in accordance with ODRC policy.[3] The Amended Complaint alleges that an orthopedic surgeon at Correctional Medical Center ("CMC") instructed Creech to continue using the cane, but as the

---

[1] Creech continued to receive disability payments from 1989 until 2008, when his benefits were suspended because of his current prison sentence.

[2] Although Creech filed his 1999 medical records as a supplement in support of his motion for summary judgment, there is no indication that the information from his hospital records was ever made known to CCI medical personnel, or even incorporated into his prison medical file.

[3] Per ODRC's guidelines for medical restrictions, a medical restriction is "[a] medical accommodation written by a physician or other advanced health care provider, used to address a serious medical need. Medical restriction orders are temporary and must be regularly reviewed and rewritten." R. 74-3, PageID# 926.

magistrate judge points out, there is no order to that effect. As required, Creech's medical restrictions—the cane and bottom-bunk—were reviewed several times prior to August 2016.

Prior to August 2016, Creech was able to walk four or five miles at a time with the aid of his cane. On August 23, 2016, Creech had a general medical examination with Nurse Practitioner Gary Artrip. During the examination, Artrip expressly noted Creech's "swift gait [when] using [a] cane," R. 66-1, PageID# 743, and at the conclusion of the appointment, Artrip took Creech's cane. Artrip's medical opinion that Creech's "cane was no longer medically indicated [was] based on [his] medical judgment after personally observing [] Creech during a clinic evaluation, personal observations of [Creech] walking in the [prison], review of [Creech's] medical file, and the institutional security concerns regarding the use of a cane." R. 74-2, PageID# 925.

Creech unsuccessfully appealed Artrip's decision through the ODRC grievance process. During the appeal process, three additional CCI medical personnel, including the Chief Medical Inspector, the reviewer of last resort, all concluded that the cane was not medically indicated. In denying Creech's grievance as a "valid exercise of discretion," the of the reviewers explained that although Creech's "treatment" plan might not be to his "satisfaction," "the doctor's decision [was] based on [her] expert medical opinion" and "the Chief Medical Officer [had] sole responsibility for all matters involving purely clinical judgment." R. 74-4, PageID# 934. The Inspector expressly noted that Creech's "record [] indicates that you currently have no diagnosed mobility issues . . . that suggest your need for [a cane]." *Id*. at PageID# 931. After the conclusion of the grievance process, Creech did not mention the cane again in his written Health Services Requests until 2019.

After losing his cane, Creech went from walking four or five miles a day to at most one or two miles a day, if at all. If there was nice weather and Creech was not suffering from chronic

pain, he was able to walk two or three times a week, but he still suffered from significant pain while standing still, which caused him to stop going to the chow hall. Creech asserts that, without the cane, he was prevented from having full access to the law library and that he also had reduced access to the gym and the yard. Although Creech does not identify any new diagnoses stemming from the deprivation of the cane, he asserts that his health has generally diminished because he is out of shape, that he has continuous leg pain, and that he has also gained between ten and twenty pounds.

During this time, Creech continued to see medical personnel at the prison. In June 2017, Creech submitted a Health Services Request complaining of back and shoulder pain, but neither his request nor the notes from his medical appointment mention a cane. In September 2018, Creech submitted another request and asked for his bottom-bunk restriction to be renewed. In the subsequent appointment, a prison medic noted Creech "smooth[ly] [walked] without difficulty." R. 66-1, PageID# 758.

A few months later, Creech filed this lawsuit on January 11, 2019. He had another medical appointment on January 14, 2019. At the appointment, the prison personnel noted Creech walked with a "swift/steady" "gait" and "briskly r[ose] from [the] exam table." *Id*. at PageID# 763. Creech was seen at the CCI medical clinic by another nurse-practitioner on April 9, 2019. Despite not having any complaints at his April 9 examination, Creech filed a Health Services Request on April 23, 2019, stating that he needed a cane, in addition to a back brace and a knee brace. And while this was the first written record of Creech's request for a cane since the 2016 grievance process, Creech asserts that he verbally asked prison medical staff to reissue the cane at all appointments.

On May 1, 2019, Dr. Sonya Peppers saw Creech about his request for a cane, a back brace, and a knee brace. Creech informed Dr. Peppers that he had a cane for several years, that it was

recently taken from him, that his knee occasionally gave out on him and he used the cane for support, and that, at one point, he was walking four miles each day with the assistance of his cane. During the May 1, 2019 appointment, Dr. Peppers observed that Creech walked with a limp, and that there was no medical indication for the cane, but she also noted that she would review his records to determine the need for a cane. *See id*. at PageID# 774. She also noted that Creech "admitted that he does not use the cane, he had it 'just in case.'" R. 74-1, PageID# 923. Finally, in September 2019, after another physical exam, Dr. Peppers issued Creech a cane to assist with his ambulation. Her decision to issue the cane was based on several factors, including her review of Creech's medical records, new complaints of joint pain, a new physical exam, and her medical opinion. *See id.*

Creech, proceeding pro se below, brought this action under Title II of the Americans with Disabilities Act ("ADA"), seeking damages and injunctive relief stemming from ODRC denying him the use of a cane from August 2016 until September 2019. At the close of discovery, the parties filed cross motions for summary judgment. The magistrate judge issued a Report and Recommendations; Creech filed objections; the magistrate judge filed a Supplemental Report and Recommendations; and Creech filed objections to the magistrate's Supplemental Report and Recommendations. The district court overruled Creech's objections and adopted the magistrate judge's Report and Supplemental Report, granted ODRC's motion for summary judgment, and denied Creech's motion for summary judgment. *See* R. 94, PageID# 1126. We now consider Creech's appeal.

**I.**

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in the

nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). At the summary judgment stage, the central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "This court can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (per curiam)). And because Creech proceeded pro se below, we construe liberally his district court filings. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (noting that the liberal construction of pro se filings may require "active interpretation").

Title II of the ADA provides that "no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132). The ADA's broad definition of discrimination includes failing to provide "reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability who is an applicant . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such entity." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to, walking, standing, lifting, and working. *See* 42 U.S.C.

§ 12102(2)(A). And, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures[,]" including mobility devices, or other "reasonable accommodations or auxiliary aids or services[.]" 42 U.S.C. § 12102(4)(E)(i)(I), (III).

Creech brought his claim solely under Title II of the ADA, which expressly states that "no qualified individual with a disability shall," because of their disability, "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Essentially everything a public entity does is covered by the phrase "services, programs, or activities[.]" *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (citations omitted). "The ADA applies to both federal and state prisons." *Mingus*, 591 F.3d at 482. This Court has explained that "covered entities," including prisons, must provide "meaningful access" to their services, programs, and utilities. *Keller v. Chippewa Cnty., Mich, Bd. of Comm'rs*, 860 F. App'x 381, 386 (6th Cir. 2021) (quotation omitted). We have also noted that because the ADA expressly includes failure to accommodate in the definition of disability discrimination, we apply the direct test for failure-to-accommodate claims. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416–17 (6th Cir. 2020) (collecting cases and noting that failure-to-accommodate claims "necessarily involve direct evidence . . . of discrimination"); *Keller*, 860 F. App'x at 385 (citations omitted) (framing failure to provide reasonable accommodations as direct evidence of disability discrimination). To state a prima facie case of disability discrimination based on a failure to provide reasonable accommodations, Creech must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *Anderson*, 798 F.3d at 356; *cf.*, *Keller*, 860 F. App'x at 385–86. In other words, Creech must demonstrate that ODRC

*knew* that he was disabled and refused to provide a reasonable accommodation for his disability. *See Anderson,* 798 F.3d at 357 (citing *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)).

Creech asserts that ORDC failed to accommodate his disability when it took his cane in August 2016 because, without his cane, his mobility decreased to the point that he eventually could not walk safely to and from the chow hall, and that his reduced mobility prevented "full access" to both law library and the exercise facilities at CCI. Creech argues that taking his cane constituted a denial of meaningful access to CCI's chow hall, law library, and the exercise facilities at the gym and yard. On appeal, ODRC argues that that Creech failed to establish that providing a cane was a reasonable accommodation where the cane was removed based on the medical opinion of a duly qualified medical professional; and that Creech has not demonstrated that he was denied meaningful access to any prison services, programs, or activities. *See* Appellee Br. at 14–32.

In the prison context, as here, Title II plainly covers recreational, medical, educational, and vocational activities. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (citations omitted). The critical question, however, is whether Creech created a genuine dispute regarding whether ODRC *knew* Creech was disabled and denied him a reasonable accommodation. *See Anderson,* 798 F.3d at 357 (citations omitted). The district court found, and we agree, that Creech failed to present evidence that he was denied a reasonable accommodation. Creech's medical restrictions were reviewed several times between 2012 and 2016, as required by ODRC policy. ODRC expressly requires regular review of medical restrictions. Creech's medical records also reflect that—and Creech concedes as much—Artrip removed the cane based on his medical judgment, and Dr. Peppers reissued the cane based on her own medical judgment. And in his deposition,

Creech recognized that mobility devices like canes can present a security risk to inmates and prison staff alike. *See* R. 66-1, PageID# 515–17.

Further, each time Creech submitted a Health Services Request, he was promptly seen by a qualified medical professional. As noted above, after Creech exhausted the grievance process, not one of Creech's Health Services Requests mentioned a cane until April 2019. And the medical records from his appointments do not mention any requests for a cane.[4] Rather, the medical personnel noted his "smooth ambulation without difficulty" and that his gait was "swift/steady." R. 66-1, PageID# 758, 763. Creech similarly does not argue that these medical opinions were objectively unreasonable. *See Keller*, 860 F. App'x at 386 (finding that although plaintiff "may not have received" the type of medical treatment he sought, he nonetheless received "meaningful access to medical treatment"). The record also lacks evidence to suggest that ODRC medical personnel had actual knowledge of the injuries he sustained in his two motorcycle crashes.

To his credit, Creech rightfully points out that the ADA states "episodic" impairment is a disability if it "substantially limit[s] a major life activity when active." *See* Appellant Br. at 22 (quoting 42 U.S.C. § 12102(4)(D)). The ADA also instructs that "whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . mobility devices." *Id.* § 12102(4)(E)(i). Putting these provisions together, Creech argues that he was impermissibly deprived of a reasonable accommodation because Artrip considered the "ameliorative effect[]" of Creech's cane. Creech's argument does not change the outcome of this case. True, during the August 23, 2016 examination, Artrip observed that Creech had a swift gait when using the cane, and, based on his medical judgment,

---

[4] Creech admits he did not renew his request for a cane in any of his *written* Health Services Requests until his April 23, 2019 request. And when Creech did put his request in writing, in April 2019, he was reissued a cane in a matter of months.

Artrip concluded that the cane was not medically indicated. But Creech does not argue that Artrip's medical judgment was objectively unreasonable. Even if we were to assume that Creech's proposed accommodation was a reasonable one for his disability, the ADA specifies that an entity is not required to provide the proposed accommodation if it would "fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations involved." 42 U.S.C. § 12201(f). And it can hardly be disputed that providing a cane in express contravention of ODRC policy, where competent medical professionals' medical judgment goes unchallenged, would fundamentally alter the nature of the accommodations involved.

Ultimately, Creech simply has not created a genuine issue of material fact regarding whether ODRC denied or removed a reasonable accommodation where the relevant decisions were all made by competent, qualified medical professionals acting in accordance with ODRC policy. Therefore, the district court properly awarded summary judgment on Creech's failure-to-accommodate claim.

## II.

Although the district court's merits decision was clearly supported by law and the record, the district court should have confined its inquiry to the reasonable accommodation analysis. *See Zibbell v. Michigan Dept. of Human Services*, 313 F. App'x 843, 850 (6th Cir. 2009) (affirming district court's dismissal of nonviable Title II ADA claim, but declining to affirm district court's independent ground that defendants were entitled to immunity under the Eleventh Amendment despite conclusions regarding ADA claim). Indeed, the Supreme Court's opinion in *United States v. Georgia*, 546 U.S. 151 (2006), sets out "a procedure for lower courts to follow when confronted with a state's claim of immunity under the Eleventh Amendment" in cases involving Title II of the ADA. *See Zibbell*, 313 F. App'x at 847. We explained that, "under *Georgia*, the constitutional

question—abrogation of Eleventh Amendment immunity—will be reached *only* after finding a viable claim under Title II." *Id.* at 847–48 (emphasis added) (cleaned up). Here, the district court concluded that Creech's Title II ADA claim was nonviable and properly granted summary judgment on that ground. The district court's determination that Creech's Title II claim was not viable should not have been accompanied, or even preceded, by any consideration of the second and third steps of the *Georgia* analysis. *See id.* at 848. Therefore, we affirm the district's court's decision on Title-II grounds only.

**III.**

Because Creech failed to present a genuine issue of material fact on his Title II ADA claim, the district court's opinion should not have addressed ODRC's Eleventh Amendment immunity defense. Accordingly, we affirm the district court's grant of summary judgment in favor of ODRC on Title II grounds alone.